S90A0730. IN THE INTEREST OF J. H.
(396 SE2d 885)

BELL, Justice.

This case concerns whether J. H., a sixteen-year-old girl, should be transferred from juvenile court to superior court for prosecution for murder. The juvenile court ordered the transfer, and J. H. appeals. J. H. raises four arguments. They are that the state did not present sufficient evidence to justify the transfer in view of the juvenile court's finding that J. H. is amenable to treatment in the juvenile system; that the juvenile court erred in considering a statement made by J. H. in violation of her *Miranda* rights in determining that J. H. should be transferred to superior court; that the transfer order should be set aside because the juvenile court erred in allowing a reporter to remain in the courtroom during the transfer hearing; and that the juvenile court should have ordered J. H. committed to the Division of Mental Health of the Department of Human Resources because a psychiatrist who performed a court-ordered evaluation of J. H.'s mental condition concluded that J. H. was committable as mentally ill under the laws of this state. We find no error in the transfer order, and affirm.

The juvenile court held two hearings pursuant to OCGA § 15-11-

---

39 to determine whether J. H. should be transferred to superior court. At the hearings, the court permitted, over J. H.'s objection, a reporter for the Atlanta Journal-Constitution to be present. The court ordered the reporter not to report J. H.'s name in any fashion.

At an August 22, 1989, hearing, Officer J. F. Jones testified that on March 26, 1989, he was called to the apartment of J. H.'s mother. There, he found J. H.'s mother lying on her bed, with a bullet wound to the head. J. H. had called the police to the apartment. Officer Jones testified that after processing the crime scene he and other officers asked J. H., and as many of the victim's friends and neighbors as the officers could locate, to come to the police station. According to Jones, eight or nine people, including J. H., came to the police station. At that time J. H. was not a suspect. Officer Jones stated that when he was talking with J. H. she told him that she had shot her mother while her mother was asleep. Officer Jones stated that he then asked J. H. where the gun was located. J. H. told him that she had thrown the gun into a dumpster. J. H. then led Officer Jones to the dumpster, where he recovered the gun.

After recovering the gun, Officer Jones questioned J. H. again, without giving her *Miranda* warnings, and received another statement from her, in which she admitted planning, committing, and covering up the murder of her mother.

The juvenile court suppressed the statement J. H. made after she took Officer Jones to the dumpster ("the suppressed statement"), but declined to suppress the statement J. H. made before they went to the dumpster.

Dr. Annie Cooper, a state psychiatrist whom the court had ordered to prepare a report regarding J. H.'s mental condition, was the last witness to testify at the August 22 hearing. Dr. Cooper testified that J. H. was committable to an institution for the mentally ill, and that her needs would best be met in juvenile court.

Following the August 22 hearing, the court entered an order stating that it desired further psychiatric testimony regarding J. H. The court ordered a Dr. Lloyd Baccus to prepare a report on J. H.'s mental condition.

The transfer hearing resumed September 26, 1989. Dr. Baccus testified that he thought J. H. was mentally ill but was not committable because she did not present a danger to herself or anyone else. He also felt that with sufficient care J. H. could be rehabilitated, and that it would be in her interest to be treated in the juvenile system. He stated that she would be a good candidate for outpatient treatment.

Following the September 26 hearing, the juvenile court ruled there were reasonable grounds to believe that the defendant committed the delinquent act alleged; that J. H. is not committable to an institution for the mentally retarded or mentally ill; that although J.

H. was amenable to treatment in the juvenile system, due to the heinous nature of the crime the public's interest in treating J. H. as an adult outweighed J. H.'s interest in being treated as a juvenile; and that it was in the best interest of J. H. and the community for her to be transferred to superior court.

1. J. H. first contends that the juvenile court erred in ordering the transfer because the state failed to carry its burden of showing that the community's interest in treating the child as an adult outweighed the child's interest in being treated as a juvenile. We find no error. The juvenile court properly relied on the heinous nature of the offense in determining that the community's interest in treating J. H. as an adult outweighed J. H.'s interest in being treated in the juvenile system. See *State v. M. M.*, 259 Ga. 637, 640 (3) (386 SE2d 35) (1989).

2. J. H. next argues that the transfer hearing was not held in conformity with OCGA § 15-11-31 (b), as is required by § 15-11-39 (a) (1). OCGA § 15-11-31 (b) prohibits the use of statements made by juveniles when those statements "would be constitutionally inadmissible in a criminal proceeding." J. H. argues the juvenile court violated § 15-11-31 (b) by relying on the suppressed statement as evidence that the crime was heinous enough to warrant transfer to superior court. Having reviewed the record, we find no evidence that supports J. H.'s allegation that the court considered the suppressed statement as evidence of the heinous nature of the crime. Moreover, the record shows that evidence independent of the suppressed statement was introduced that demonstrated the heinous nature of the offense. For these reasons, we find no merit to J. H.'s contention that the transfer hearing did not conform to § 15-11-31 (b).

3. J. H. next contends that the transfer hearing was not held in conformity with OCGA § 15-11-28 (c), as is required by OCGA § 15-11-39 (a) (1). J. H. argues that § 15-11-28 (c) requires the juvenile court to exclude the general public from transfer hearings, and that the court violated that statute by allowing a reporter to remain in the courtroom. J. H. argues the transfer should be set aside for this reason. We find no error. Although § 15-11-28 (c) provides that the general public shall be excluded from transfer hearings, § 15-11-28 (c) grants the juvenile court the discretion to make exceptions to the general rule for any "persons . . . the court finds have a proper interest in the proceeding or in the work of the court." See generally *Florida Publishing Co. v. Morgan*, 253 Ga. 467 (322 SE2d 233) (1984). We conclude the juvenile court properly exercised its discretion to allow the reporter to remain in the courtroom.

4. J. H. finally argues that § 15-11-40 (b) required the juvenile court to commit J. H. to the Department of Human Resources because Dr. Cooper concluded that J. H. was committable as a mentally ill child. We find no error.

OCGA § 15-11-40 (b) provides that if a court requests a report of a child's mental health, and the report concludes that

> the child is committable under the laws of this state as a mentally retarded or mentally ill child, the court shall order the child detained and shall proceed within ten days to commit the child to the Division of Mental Health, Mental Retardation, and Substance Abuse of the Department of Human Resources.

OCGA § 15-11-40 (c) provides that "[i]f the child is found not to be committable, the court shall proceed to the disposition or transfer of the child as otherwise provided by this article."

J. H. appears to be arguing that, once Dr. Cooper concluded that J. H. was committable, the juvenile court had no discretion to order a further report of J. H.'s mental condition, but instead had to commit J. H. to the Department of Human Resources. However, this argument must fail because § 15-11-40 does not limit the trial court to ordering one report. Moreover, because Dr. Cooper and Dr. Baccus reached differing conclusions regarding whether J. H. was committable, the juvenile court was faced with a factual question regarding whether J. H. was committable, and the court decided she was not. We thus conclude that the court was not required to commit J. H. under § 15-11-40.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 17, 1990.

*Kevin F. Forier,* for appellant.

*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Lyn K. Armstrong, Joseph J. Drolet, Assistant District Attorneys, Michael J. Bowers, Attorney General,* for appellee.